WHITLOCK

*v.*

GORDON'S ADM'R.

(*Special Court of Appeals of Virginia, June, 1877.*)

[Virginia Law Journal, 1877, p. 370.]

**Bond—Deed of Trust to Secure—Sale of the Land—Assumption of Debt—Case at Bar.**

On the 6th of March, 1862, R. borrowed of G., who was then in Baltimore, having gone there on a visit to a daughter, and having been unable to return to Virginia, through D., who acted in Virginia as the agent of G., the sum of $5,000; for which R. executed his bond at five years, and a deed of trust on real estate to secure the same. R. subsequently sold the land, subject to the deed of trust, to J., who retained $5,000 of the purchase money, and covenanted with R. to assume and pay the bond from R. to G. J. afterwards sold the same land, subject to the same deed of trust, to W. & Co., who likewise covenanted to assume and pay the said bond from R. to G. : *held* :

**Same—Same—Validity of.**

1. G. did not become a resident of Maryland or an alien enemy, and therefore the bond and deed of trust are not void.

**Same—Same—Same.**

2. Even if G. was an alien enemy, the dealings of D., who was her agent, and resided in Virginia, being wholly domestic and confined to his own country, are valid, and there is no ground for escaping the payment of said bond, either principal or interest.

**Same—Same—Quære.**

3. *Quære.* Whether W. & Co. can object that the bond and deed of trust are invalid as being a transaction between alien enemies, when R. sets up no such objection.

Statutes—Decree against Personal Representation.

4. Under ch. 116, s. 2, Code of 1860, there may be a decree in favor of the adm'r of G. against J. and W. & Co.

Deed of Trust—Suit to Enforce Personal Decree for Balance.*

5. Where a suit is brought to foreclose a mortgage or enforce a trust deed, there may be a personal decree against those liable therefor, for any balance left unsatisfied by the sale of the mortgaged subject.

Same—Same—Order of Liability.

6. In decreeing that balance, W. & Co., who were ultimately bound to indemnify the other parties, ought to be required in the first instance to pay it, and in case of their failure, the other parties in the inverse order of the time of their several liabilities.

Same—Same—Same—Scaling.

7. It appearing that it was the understanding of the parties that the bond of $5,000 should be paid in the money current at its maturity, the same constitutes a contract of hazard and is not to be scaled.

Equity Practice—Decree between Co-Defendants.

8. Whenever a case is made out between co-defendants by evidence arising from the pleadings and proofs between the plaintiff and defendants, it is the right and the duty of the court of equity to decree between the co-defendants.

From the chancery court of the city of Richmond. This court concurred with the chancellor on all but one of the points involved. The portion of Judge Fitzhugh's opinion which relates to that point, is as follows:

The third exception applies to the opinion of the commissioner that the land conveyed in trust to secure the bond be first sold and if there should be a deficiency, that Rose should be decreed to pay it to complainant.

The exception considers that it is right that the land should be first sold, but claims that if the land should be insufficient to pay the debt, the complainant should be compelled to ex-

---

*See monographic note on "Deeds of Trust," Va. Rep. Anno.

haust his remedies first against Whitlock & Co., and then against Ella Johnson before he could have a decree against Rose.

I think the position taken by counsel in the exception is untenable. The facts in the case of Marsh v. Pike, 10 Paige 595, cited by Rose's counsel, are very similar to this case. In that case Marsh, in 1839, gave Pike his bond for $3,000, payable three years after date, with interest payable semi-annually. In 1841 he conveyed the mortgaged premises to McLean, subject to the mortgage, the amount of which was deducted from the purchase money, and which mortgage McLean agreed with Marsh to pay off and discharge. In August of 1841, McLean sold the premises to Fowle, subject in like manner to the mortgage. So far this is all fours with the case under consideration. But here the similarity ends. For Marsh, who occupied the same position in that case that Rose does in this, brought the suit to compel Fowle and McLean to pay and satisfy the bond and mortgage. And the court says that the effect of the several conveyances and agreements was, in equity, to place Marsh in the situation of a surety for the payment of the bond and mortgage, and to make the defendants Fowle and McLean the principal debtors as to him. And, applying that principle to this case, if Rose had sued here as Marsh did, then Whitlock & Co., and Ella Johnson would have been the principals, and Rose the surety, as between themselves, and Whitlock & Co., would be primarily, and Ella Johnson secondarily, liable to him for the payment of the debt.

But in this case, Gordon, who occupies the position of Pike in that case, brings suit, and the court say that Marsh, the debtor, could not compel Pike, his creditor, to file a bill of foreclosure against the person to whom the premises were subsequently conveyed, when there was no good reason why Marsh did not pay his bond according to his agreement, and

take an assignment of the bond and mortgage, and proceed against the land and the subsequent grantees thereof for his indemnity.    In other words, the court decided a principle which, when applied to this case, is that as between Gordon and Rose, Rose is primarily liable for any deficiency upon the sale of the land, and decree should go against him primarily for it.    But on the authority of that case, leave should be reserved to Gordon for a remedy over against Whitlock & Co., and Ella Johnson, in case Rose should not be able to pay the deficiency.

For though there is no privity of contract between Gordon and Whitlock & Co. and Ella Johnson, yet sec. 2 of chap. 116, Code 1860, p. 558, provides the remedy in such case.

And, in the event that Rose pays the deficiency, he ought not to be turned over to another tribunal for his remedy, but the decree should reserve to Rose a remedy over first, against Whitlock & Co., and secondly, against Ella Johnson, for any deficiency he should pay to Gordon.

The exception is overruled.

*Neeson* and *Johnson*, for appellants.

*Pleasants* and *Steger & Sands*, for appellees.

WINGFIELD, P., delivered the opinion of the court.

On the 6th day of March, 1862, Lysander W. Rose executed his bond to Mrs. Anna C. Gordon for the sum of five thousand dollars, payable five years after date, with interest thereon from the date, payable semi-annually, on the 1st days of July and January of each year, for money borrowed by him through the agency of Lancaster & Co., of Richmond, of Douglass H. Gordon, the son and agent of the obligee, who resided in Virginia, and on the same day Rose and wife

conveyed the tract of land in question in this suit to Robert A. Lancaster and James Pleasants, in trust, to secure the payment of the said debt and interest accruing thereon semi-annually, to Mrs. Gordon, with power to sell the same in default of payment, either of the principal or interest of the debt, which was duly recorded.

On the 15th of October, 1862, Rose and wife, by deed of that date, conveyed the same land to Ella Johnson, in consideration of the sum of nine thousand five hundred dollars, with a covenant in it between them as follows : ''The said real estate being under an incumbrance created by a trust deed to Ro. A. Lancaster and James Pleasants by the said Rose and wife, dated —— of March, 1862, to secure a bond of $5,000 to Anna C. Gordon, dated 6th of March, 1862, payable five years after date, interest semi-annually, on the 1st of July and January in each year, which said deed is recorded in Henrico county court, is now conveyed subject to that incumbrance, and the said Ella Johnson, having retained out of the purchase money the sum of $5,000, equal to the principal due on said bond, hereby covenants and doth assume the said lien, and binds herself to pay off the same when due, and to release the said parties of the first part from all liability to pay the same.'' This deed was signed and executed both by Rose and wife and Ella Johnson.

On the 23d of June, 1864, Ella Johnson, in consideration of $5,000 ''in hand paid and of the assumption by the parties of the second part of the lien created by the trust deed thereinafter (''hereinafter'') referred to, by deed of that date conveyed the same land to John E. Whitlock, George W. Smith and Pleasant W. Harwood, to be held by them as partners under the firm of ''John E. Whitlock & Co.,'' with this recital and covenant contained therein, *i. e.* ''The real estate hereby conveyed is subject to a lien created by a deed of trust dated 6th of March, 1862, executed by said

Rose and wife to James Pleasants, trustee, to secure to Anna C. Gordon the payment of a bond for $5,000, payable five years after date, with legal interest thereon, payable semi-annually, which lien the said parties of the second part do hereby assume and covenant to pay off at maturity, together with all interest thereon which has already accrued from its date, or may accrue to its maturity," which was signed and executed by the said Ella Johnson and each of the grantees.

Mrs. Gordon died in October, 1867, and neither the debt or any part of the interest on it having been paid in her lifetime, her administrator requested the trustees to sell the real estate conveyed by the deed of trust of the 6th of March, 1862, executed by Rose and wife to secure its payment, when a question arose as to what kind of funds the bond was to be paid in. The administrator claiming it was to be paid in the currency that was in circulation when the principal fell due, and the appellants contending that the debt was contracted in reference to confederate notes as a standard of value, and that it should be scaled. In this state of things the trustees refused to sell until this question was settled by a judicial decision.

Thereupon this suit was brought by the adm'r of Anna C. Gordon. The bill claims that the plaintiff was entitled to the full amount of the bond without abatement, and prays that the debt due by the bond may be established at the principal sum of $5,000, with interest thereon, that the real estate conveyed by the several deeds aforesaid may be sold and its proceeds applied to the discharge of the debt, and that any balance due after applying the proceeds of such sale be decreed to be paid to him—all of the deeds above mentioned are set out in the bill as parts of it and copies of them filled with it as exhibits, and Rose, Ella Johnson, Whitlock, Smith & Harwood and the trustees are made parties defendant.

Rose, by his answer, admits that at the date of the bond he borrowed of Mrs. Gordon, who, he says, was at "that date a citizen of and living in the city of Baltimore, Maryland," the sum of $5,000, in what was known and designated as confederate treasury notes, which said loan was made and effected through Douglass H. Gordon, who was then in the city of Richmond, and who was, as he was informed and believed, the agent of Mrs. Gordon. He also admits that the principal sum of $5,000 has not been paid, and that the same, or the equitable value of it, remains unpaid. But insisted that the real estate shall first be sold and applied to its payment, and if that should prove insufficient that the plaintiff shall then be required to resort first to the said Whitlock, Smith & Harwood, and then to Ella Johnson, on their several covenants in the deeds to them for the payment of such balance, and shall not be allowed to resort to him unless the decrees against them should prove unavailing.

But does not set out whether or no there was any agreement between the parties as to the kind of currency the bond was to be paid in when it fell due, but on this subject is wholly silent.

Whitlock, Smith & Harwood also filed their joint and several answers, in which they admitted the purchase of the real estate from Ella Johnson, and that part of the consideration of the purchase was their agreement to pay off the lien created by the deed of trust. They then aver that Anna C. Gorden was out of this state during the entire war and within the federal lines, and therefore they are not liable to pay interest on the debt during the period of the war.

2d. That at the time of the loan to, and execution of the bond and deed of trust by Rose, she was a resident of the state of Maryland, and by law all commerce and intercourse between belligerents is forbidden and all contracts between

them inhibited, and consequently the bond and deed of trust are void.

3d. That the bond was given for confederate states treasury notes—that by the law of Virginia the amount of such bond is to be scaled as of the value of such notes when it fell due, and that if Mrs. Gordon had been a resident of Virginia at the time of the maturity of the bond in 1867 confederate money was of no value, and at the fall of the Confederacy $60 of it was about equal to one dollar in gold, by which estimate the bond would be worth $83⅓, which is all that she could have been entitled to if she had been a resident of Virginia.

And that by their undertaking to pay off the lien on the land, they are bound no further than the legal liability expressed on the face of the bond and deed of trust, and by the law of the land, this is measured by the value of the confederate money when it fell due as established by the principle of "Dearing & Rucker," which they insist governs the case.

The court by an interlocutory decree, made the same day on which the last mentioned answer was filed, referred the cause to a commissioner, to enquire into and report the true understanding and agreement between the parties, either express or to be implied, in respect to the kind of currency in which the said bond was to be fulfilled or performed, or with reference to which as a standard of value it was made and entered into. And to state an account showing the true indebtedness on the bond to the intestate of the plaintiff; in response to which the commissioner reported that "it was not the true understanding and agreement between the parties, either express or implied, that the bond for $5,000 was to be fulfilled or performed in confederate states treasury notes or in currency of the confederate states or its equivalent in value, nor was it made in reference

to such notes as a standard of value. But that it was made with reference to the currency which might be in circulation on the 6th day of March, 1867, when it fell due—and that the plaintiff had a right to demand payment of it in the currency generally paid and received in the community in payment of debts on the 6th day of March, 1867—and that the whole amount of the principal sum of $5,000, with interest on it from the date of the bond, was due." To this report the defendant Rose excepted : 1st. Because the commissioner certified that there was no agreement, express or implied, that the bond was to be discharged in confederate currency. But was made in reference to the currency that might be in use when it fell due. Whereas, he ought to have reported that at the date of the loan the currency in the community was confederate states treasury notes, and that they were the general circulating medium, and that the loan was in such notes—and that the plaintiff had a right to demand payment of the bond only according to the value of the confederate states treasury notes, at the date of the bond (when they were loaned).

2d. Because the commissioner allowed interest on the bond for the period of the war. And 3d. That in reporting the mode and order in which the said debt ought to be paid, the commissioner certified as his opinion that the land conveyed by the trust deed should first be sold for the purpose of paying the bond, and if it should not bring a sufficient amount for the purpose, that the defendant Rose should be decreed to pay the deficiency, &c.

The chancellor, in a written opinion, delivered at the hearing of the cause, very much doubted even if it were shown that Mrs. Gordon was a citizen and resident of Maryland at the time the contract was made here in Virginia with Rose, whether it was competent for Whitlock & Co. to raise the question as an objection to their obligation to dis-

charge the bond and to pay off the lien on the land according to their covenant, inasmuch as Rose raised no such question, but on the contrary treated the contract as a legal and valid one ; but waiving that question, held that the proof established the fact that Mrs. Gordon was not a resident of Maryland, and was not an alien enemy. But if she had been an alien enemy it would have been competent for her to have acted through her agent here without violating the laws of nations or the non-intercourse acts. And holding that the proofs showed that the contract between Rose and Mrs. Gordon was one of hazard, and it was intended by it that the bond should be paid in whatsoever currency might be in circulation when it became payable, and that as Mrs. Gordon had an agent here during the entire period of the war, known to the defendant Rose, to whom he might have made payment of the interest, it ought not to be abated during the war, and overruling all of the exceptions to the report, decreed that the real estate should be sold (unless the defendants, Rose, Johnson and Whitlock & Co., or some of them, should pay it in 60 days), and its proceeds applied to the payment of the plaintiff's debt. And if it should turn out that the proceeds of the sale should be insufficient to pay the plaintiff's debt and costs, it was further decreed that Rose should pay the plaintiff the remainder of his debt, and should he be unable to make it out of Rose, liberty was reserved to him by virtue of the decree to apply to the court for redress against the defendants, Whitlock & Co., and that failing, then against the defendant, Ella Johnson ; and in the event Rose should be compelled to pay the debt to the plaintiff, liberty was reserved to him in like manner to apply for redress against Whitlock & Co., and that failing, then against Ella Johnson, and if Ella Johnson should be compelled to pay any part of the debt, liberty was reserved to her in like manner to apply for redress against Whitlock & Co. From this decree the defendants,

Whitlock, Smith & Harwood, appealed, and in their petition assign for error :

1st. That on the evidence and law the bond for $5,000 was illegal and void, being made in contravention of the laws of war and the duties of the parties thereto as subjects of adverse belligerents.

2d. It was error to render any decree against them—that they purchased of Ella Johnson, subject to the deed of trust to secure the bond of $5,000. The trust deed created the lien on the land, and they stipulated in the deed to them to assume the lien and pay it at maturity—this was their contract with Ella Johnson and for her benefit and not with or for Anna C. Gordon, and that the fair construction of it is, that they (the vendees) should take the land burdened by or subject to that lien, and not that they should be personally responsible for any additional sum—that the covenant did not authorize a decree in behalf of the plaintiff under § 2 of ch. 116 of the Code, as it was not made for the sole benefit, or even common benefit of Anna C. Gordon and any other.

3d. It was error to render any decree between the co-defendants in the case, as the pleadings were not such as to justify any decree between them.

4th. It was error to render any decree beyond the sale of the land.

And 5th. The court erred in refusing to commute or scale the bond of $5,000 to the value of it in confederate states treasury notes.

I fully concur with the chancellor in his opinion and in his decree, except as to the order in which he subjected the defendants to the payment of any surplus of the debt that might remain after applying the proceeds of the sale of the

real estate.    I think they ought to have been subjected in
the inverse order of the time of the execution of the several
deeds, and that Whitlock & Co. (who were ultimately bound
to indemnify the other parties) ought in the first instance to
have been decreed to pay that balance.    There was no use
in requiring Rose first to pay it, and then turning him round
to have it repaid to him by Whitlock & Co.    (Ashurst v.
Eyre, 2d Atk. 51 ; Maddox v. Jackson, 3d Atk. 341 ; Fos-
ter and wife v. Crenshaw's adm'r, 3 Munf'd 514 ; Bentley
v. Harris's adm'r, 2d Grattan, 367, and 2d Rob. Prac. (old)
262, and the cases there cited), but the appellants are not
prejudiced by this, and Rose, the only party who has a right
to do it, makes no complaint.

The proof shows that before the war Mrs. Gordon was a
citizen of Virginia, and resided in her own house in Fredericks-
burg.    That she was in the habit of making a visit to her
daughter, Mrs. Thomas (who resided in Baltimore), and
spending some time with her every year.    That in April,
1861, she made one of her annual visits to her daughter in
Baltimore (whither she arrived on the 16th of April), with
an intention of staying a month and then returning to her
home in Fredericksburg, and carried with her only the cloth-
ing and necessaries for a visit of that length of time, but
was prevented from returning home, as she had intended
and expected, by the breaking out of the war, and the occupa-
tion of the intervening country by the armies of the contend-
ing powers.    That she always intended to return as soon as
circumstances would permit, always called and regarded her
house in Fredericksburg as her home, and never intended to
change her domicil, or take up a residence anywhere else.
But she was prevented from returning during the war in
consequence of the lines of the hostile armies intervening,
and the alternative occupation of Fredericksburg by the
troops of one of the other of the contending parties
during the war, and for that reason remained with her

daughter during the whole war—and when it was over she could not return to her home, although in 1866 she went to Fredericksburg to get her house but could not get it, because it was occupied by the federal authorities as a hospital ; and after that her health failed, so that, when it was vacated by the yankees, though anxious to return, she was unable from ill health to do so, and finally died without having done so ; and that while she was sojourning with her daughter during the war she was engaged in no sort of business, nor had any sort of business transactions with the people among whom she resided. Upon this proof I think the chancellor was well justified in holding that the involuntary sojourn of Mrs. Gordon in Maryland during the war did not make her an alien enemy.

But if she had been, there was really no intercourse between her and the obligor in the bond, but the transaction and contract was between Rose and her son and agent, who resided here during the whole war, and there is no doubt that an alien enemy may have an agent in his enemy's country to take care and manage his affairs, and that the contracts of such agent with any other of his fellow citizens, in relation to the property so committed to his care, is lawful. (Manhattan Life Ins. Co. v. Warwick, 20 Grattan ; Campbell v. Ranson, 21 Grattan, 405, and Pidgeon v. Williams, 21 Grattan, 251, and the numerous authorities cited in these cases.) So that in any view of the case the contract was a lawful and binding one. But if it were otherwise, I should very much doubt the right of the appellants to question it, as Rose does not question it or set up any defence to it on account of its illegality, and as the appellees agreed to pay it as part of the price they were to give for the land, I am inclined to think it would come under the influence of the principles established by the cases of Spangler v. Snapp, 5 Leigh, 478, and DeWolf v. Johnson, 10 Wheaton, 367, but in the view

I have taken of the case it is unnecessary to decide upon this question.

As to the second ground of error assigned. It seems to me that an action at law might have been maintained by Mrs. Gordon against Whitlock & Co. on the covenant in the deed between Johnson and them, under § 2 of chap. 116 of the Code, for so far as they covenanted to pay off the bond it was for the sole use of the obligee in it, and it could not be paid to any one else. Ella Johnson could only maintain an action against them for having failed to pay the debt to Mrs. Gordon. The covenant recites that Mrs. Gordon has a lien on the land created by Rose's trust deed for the payment of a bond of $5,000, with interest, &c., payable five years from the 6th of March, 1862, and then follows the covenant in these words, "which lien the parties of the second part" (Whitlock & Co.) "do hereby assume and covenant to pay off at maturity, together with all the interest thereon, which has already accrued from its date to its maturity," but be this as it may, I think there is no doubt of her right to come into equity to be substituted to the rights of the covenantees and to have the covenant enforced for her benefit, if there had been no other ground of jurisdiction in the case (as there clearly was to enforce the trust).

The proof, I think, clearly shows that the contract between Rose and Gordon was one of hazard, and that the reason of the loan's being made on five years' time was because it was agreed that it should be paid in whatever currency was in general circulation when it came to maturity, and therefore there is no ground for this specification of error relied on in the argument.

In relation to decrees between co-defendants, I understand the rule in Virginia to be the same as that laid down by Lords Eldon and Redesdale in the House of Lords in the case of Chanity v. Lord Dunsany, 2 Sch. and Lef. 689, that "when-

ever a case is made out between the defendants by evidence arising from the pleadings and proofs between the plaintiff and the defendants, a court of equity is entitled to make a decree between the defendants, and is bound to do so." McNeil v. Baird, 6 Munf. 316 ; Allen v. Morgan, 8 Grattan, 60 ; Morris v. Terrill, 2 Ran. 6 ; Munday v. Vawter, 3 Grattan, 358 ; Templeman v. Fauntleroy, 3 Ran. 434. There have been various cases decided in our court of appeals rejecting decrees between co-defendants (and the case of Blair v. Thompson, &c., 11 Grattan, 441, cited by the counsel of the appellants, is one of them), because the matter did not arise from the proceedings and proofs between the plaintiff and defendants. But none of them, I think, impugn the rule as above laid down that whenever a case does arise between the defendants upon such proceedings and proofs it is the right and duty of the court to decree between them, and make an end of the controversy, and save the necessity of other suits and further delay and expenses. And tested by that rule, it seems to me there can be no doubt of the right of the court to decree between the defendants in this case, because the questions of the making of the covenants in the several deeds by the defendants, and their obligations arising out of them to the plaintiffs and towards each other, were put directly in issue by the proceedings, and were obliged to arise from the proceedings and proofs between the plaintiff and the defendants. I think, therefore, that there is nothing in the objection taken in the third assignment of error.

Nor do I think there is anything in the next cause of error assigned, that the court ought not to have proceeded further than to a decree for a sale of the land. Whatever may have been decided elsewhere, our court of appeals has never, that I am aware of, held that there could not be a decree in favor of the mortgagee against the mortgagor for any balance of his debt that the subject of the mortgage when it was fore-

closed did not pay; it seems to me there could be no case in which a personal decree for the balance due would be more proper, for in all such cases, unless the sum claimed to be due is admitted, a reference is had to a master to state the accounts between the parties, and when this is done and the exact amount due is ascertained, the plaintiff ought not to be remitted to another suit to recover it. What possible good could result from such a course? The only effect of it would be to delay the creditor and vex the debtor with another suit and mulct him in another set of costs, when the whole matter might have been settled in the first suit without additional costs in the same decree that confirmed the sale under the decree of foreclosure; and in all the courts with whose practice I have had any experience the rule has always been to make a personal decree for such balance.

Upon the whole case I think the decree ought to be affirmed.

Decree affirmed.